■ RICHARD B. HAWKS, Respondent, v RECORD PRINTING AND PUBLISHING COMPANY, INC., Individually and Doing Business as THE REGISTER STAR, et al., Appellants. — Kane, J. Appeal from an order of the Supreme Court at Special Term (Hughes, J.), entered March 2, 1984 in Columbia County, which denied defendants' motion for summary judgment dismissing the complaint.

On or about May 10, 1982, the attorney for one Patrick O'Brien, Jr., left a copy of an amended notice of claim with the news editor, James Calvin, of defendant Record Printing and Publishing Company, Inc., doing business as *The Register Star,* a Columbia County newspaper. O'Brien sought to recover damages for physical injury and false arrest against both the Town of Greenport in Columbia County and Columbia County. O'Brien alleged, *inter alia,* that: "On November 22, 1981 at the Columbia County Jail, the County of Columbia, *acting through Deputy Sheriffs Graziano, Near, Hawks, and Crowley,* and jail personnel, and the Town of Greenport, acting through Patrolman [*sic*] Stiffler and Yannacone, negligently, recklessly and maliciously pushed and knocked claimant to the floor, kicked him and twisted his right hand behind his back, causing damage to claimant's right hand, wrist and arm, and also to claimant's left foot and ankle" (emphasis supplied). The news editor assigned defendant John Rabiroff to write a news article about the notice of claim. Rabiroff, who had joined the newspaper staff in May 1981, had written an initial newspaper article about O'Brien's arrest in November 1981.

In preparing the story, Rabiroff read the notice of claim, reviewed his November 1981 article and, in order to obtain the

first name of the "Hawks" mentioned in the notice, consulted a list of deputies, jailers and others employed by the Columbia County Sheriff's Department. The "jailers" list consisted of 13 names; the first name on the list was "Richard Hawks", plaintiff herein, and the ninth name was "Bruce Hawks". Rabiroff did not know how old the list was, but knew that it predated his arrival at the newspaper in May 1981; it had been compiled by news editor Calvin when he was a reporter. Rabiroff chose the name "Richard Hawks" for his article.

Rabiroff then typed the article up on a computer terminal, after which it was reviewed by the news editor and, on May 11, 1982, published as Rabiroff had written it. Apparently, neither Rabiroff nor the editor raised any doubts as to the story's accuracy. The story, entitled "Catskill man suing for false arrest", detailed the charges alleged in the notice of claim and reviewed O'Brien's arrest, the incident at the jail, the indictment, and the dismissal of the resisting arrest and assault counts. Paragraph three of the article stated: "Mr. O'Brien, a 38-year-old state prison guard, through his attorney Francis Roche, has filed notice of claim accusing Mr. Graziano, Deputy Reginald Crowley, *jailers Jan Near and Richard Hawks,* and Greenport policemen Ed Stiffler and Timothy Yannacone of roughing him up during his arrest and processing at the Columbia County Jail" (emphasis supplied). Paragraphs 13 and 14 went on: "The notice of claim filed by Mr. O'Brien alleges the officers 'negligently, recklessly and maliciously pushed and knocked (him) to the floor, kicked him and twisted his right hand behind his back' and pushing him backward into a chair.

"As a result, his hands, wrists, arms, foot and ankle were injured, court papers filed by Mr. O'Brien claimed. He also alleged that they failed to provide him with medical attention at the time for his injuries."

On the date of the story's publication, Richard Hawks called the newspaper and told Rabiroff that he had been erroneously named in the article as one of the jailers who had allegedly roughed up O'Brien. Richard Hawks had been employed for about 11 years as a deputy on road patrol and a jailer for the Columbia County Sheriff's Department until about March 5, 1981. Since then, however, and at the time O'Brien was allegedly roughed up, he had been a self-employed process server.

On May 12, 1982, a correction was printed on page two of the newspaper, under the heading "Correction": "HUDSON — Bruce Hawks is one of several law enforcement officers named in a notice of claim filed by Patrick O'Brien of Catskill alleging false arrest and police brutality. Tuesday's Register-Star erroneously

identified him as Richard Hawks, who is his uncle. (jr)". The correction type size was the same as for the May 11 article, though the headline type size was smaller; the newspaper normally placed corrections on page two.

That same month, plaintiff, Richard Hawks, commenced the instant lawsuit against the newspaper for $100,000 in damages for publishing the article in a grossly irresponsible manner, $300,000 in punitive damages for publishing the article maliciously, and $10,000 in damages for injury to his process-serving business as a result of the publication. He also sued Rabiroff for $100,000 for publishing the article maliciously and in a grossly irresponsible manner.

After defendants answered and plaintiff served a bill of particulars, defendants moved for summary judgment dismissing the complaint. Defendants argued that plaintiff could neither show the gross irresponsibility required for recovery of compensatory damages nor the malice required for recovery of punitive damages. Plaintiff served his own affidavit in opposition to the motion. Essentially, plaintiff argued that defendants could have avoided the defaming error by review of court records, contacting Richard Hawks or John Hawks (whom Rabiroff was acquainted with and knew was not involved in the O'Brien incident and who, at the time, was Chief of Police of Greenport), contacting O'Brien's attorney and/or contacting the local prosecutor's office. Plaintiff further argued that defendants' actions were grossly irresponsible and that, at least, an issue of fact had been raised as to whether defendants acted maliciously and/or in a grossly irresponsible manner.

Special Term denied defendants' motion, finding that whether defendants acted in a grossly irresponsible manner or in a manner evidencing a reckless disregard for the truth warranting the imposition of punitive damages presented a factual issue. This appeal ensued, in which defendants reiterate their argument made before Special Term that plaintiff has failed to present factual issues with respect to whether defendants acted with gross irresponsibility or with malice (i.e., reckless disregard for the truth).

The case of *Chapadeau v Utica Observer-Dispatch* (38 NY2d 196, 199) instructs us that: "[W]ithin the limits imposed by the Supreme Court where the content of the article is arguably within the sphere of legitimate public concern, which is reasonably related to matters warranting public exposition, the party defamed may recover; however, to warrant such recovery he must establish, by a preponderance of the evidence, that the publisher acted in a grossly irresponsible manner without due

consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties". A wide variety of factors may enter into a determination of whether the "grossly irresponsible" standard has been met, such as whether sound journalistic practices were followed in preparing the defamatory article (*see, Freeze Right Refrig. & Air Conditioning Servs. v City of New York,* 101 AD2d 175, 186), whether normal procedures were followed and whether an editor reviewed the copy (*see, Ortiz v Valdescastilla,* 102 AD2d 513, 519-520, *appeal withdrawn* 63 NY2d 773), whether there was any reason to doubt the accuracy of the source relied upon so as to produce a duty to make further inquiry to verify the information, for example, by checking secondary sources (*see, Gaeta v New York News,* 62 NY2d 340; *Ortiz v Valdescastilla, supra*), and whether the truth was easily accessible (*see, Hogan v Herald Co.,* 84 AD2d 470, 476, *affd* 58 NY2d 630).

Applying the above principles to this case, we reach the conclusion that Special Term properly determined that defendants' conduct should be judged by a jury (*see, Hogan v Herald Co., supra*). Also, turning to plaintiff's claim for punitive damages, we find that the record supports Special Term's determination that the issue of whether defendants acted in a manner evidencing a *reckless disregard* for the truth presents a factual question for resolution by a jury (*see, Meadows v Taft Broadcasting Co.,* 98 AD2d 959; *cf. Rinaldi v Holt, Rinehart & Winston,* 42 NY2d 369, 379, *cert denied* 434 US 969; *Hogan v Herald Co., supra,* pp 479-481).

Accordingly, the order must be affirmed (*see, Meadows v Taft Broadcasting Co., supra*).

Order affirmed, without costs. Mahoney, P. J., Kane, Casey, Weiss and Levine, JJ., concur.